**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

      - against -                **00-cr-977 (JGK)**

**KEVIN ALLER,**                    **OPINION & ORDER**

              **Defendant.**

---

**JOHN G. KOELTL, District Judge:**

On May 22, 2003, a jury found Kevin Aller guilty of one count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d) (Count Two); one count of conspiracy, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute less than five grams of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C) (Count Three); and one count of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (Count Four). On September 26, 2003, Aller was sentenced on those three counts principally to 20 years' imprisonment on Counts Two and Three, and 10 years' imprisonment on Count Four, all to run consecutively, for a total sentence of 50 years' imprisonment. Following two direct appeals – one after initial sentencing and one after resentencing in light of United States v. Booker, 543 U.S. 220 (2005) – and two petitions under 28 U.S.C. § 2255, Aller's convictions stand and his term of imprisonment remains 50 years.

1

Pending before the Court now is a motion by Aller to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2); a petition for a writ of _audita querela_; and a motion pursuant to Section 404 of the First Step Act. For the reasons that follow, the motion pursuant to 18 U.S.C. § 3582(c)(2) is **denied**; the petition for a writ of _audita querela_ is **denied**; and the motion under the First Step Act is **granted**.[1]

**I.**

**A.**

On October 1, 2002, a nine-count superseding indictment, S4 00 Cr. 977 (the "Indictment"), was filed against Aller. Dkt. No. 52. Count One charged Aller with participating in a racketeering enterprise known as "Baby J's Crew," in violation of the RICO Act, 18 U.S.C. § 1962(c). The predicate racketeering acts alleged in Count One included two murders and a conspiracy to distribute and possess with the intent to distribute narcotics. Count Two charged Aller with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). Count Three charged Aller with participating in a narcotics conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with the intent to distribute a quantity of cocaine and crack cocaine in excess of

---

[1] The defendant has also made a _pro se_ motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and for a determination that he should be sentenced to home confinement. The Court will defer ruling on that application until it has concluded resentencing the defendant under the First Step Act.

five kilograms, in violation of 21 U.S.C. § 841(b)(1)(A). Count Four alleged that Aller conspired to murder Joseph Coppedge in aid of racketeering, in violation of 18 U.S.C. § 1959(a). Count Five alleged that Aller did in fact murder Joseph Coppedge in aid of racketeering, in violation of 18 U.S.C. § 1959(a). Counts Six and Seven charged Aller with murdering Kiron Little and Coppedge while engaged in a drug trafficking offense, in violation of 21 U.S.C. § 848(e)(1)(A). Counts Eight and Nine charged Aller with firearm offenses, in violation of 18 U.S.C. § 924(c) and (j).

**B.**

On May 12, 2003, Aller went to trial before Judge John S. Martin and a jury. The Government proceeded at trial only on Counts One through Six.

On May 22, 2003, the jury returned a verdict. The jury found the defendant guilty of the RICO conspiracy alleged in Count Two, the narcotics conspiracy alleged in Count Three, and conspiracy to murder Joseph Coppedge in aid of racketeering as alleged in Count Four. With respect to the narcotics conspiracy charged in Count Three, although the superseding indictment charged Aller with a conspiracy to possess and distribute with the intent to distribute at least five kilograms of cocaine and at least 50 grams of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A), the jury found Aller guilty of the lesser-

included offense of conspiring to possess and distribute with the intent to distribute less than 5 grams of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C). The jury acquitted Aller of the substantive murder of Coppedge in aid of racketeering alleged in Count Five and of the substantive murder of Coppedge while engaged in drug trafficking alleged in Count Six. The jury was unable to reach a verdict on Count One, the substantive RICO charge. Without objection from the parties, Judge Martin accepted the partial verdict.

### C.

The Probation Office prepared a Presentence Investigation Report ("PSR").The PSR noted that pursuant to § 3D1.2(c), the RICO conspiracy count and the narcotics conspiracy count would be grouped together as Group 1 because the narcotics conspiracy was a specific offense characteristic of the RICO conspiracy. PSR ¶ 35. The conspiracy to murder in aid of racketeering count would be grouped alone as Group 2 because it involved a separate victim. Id.

With respect to calculating the base offense level for the RICO conspiracy conviction, the PSR noted that the conviction was covered by U.S.S.G. § 2E1.1, which in turn directed that the Guideline for the underlying racketeering activity be used, in this case the Guidelines section covering narcotics conspiracy, U.S.S.G. § 2D1.1. Id. ¶ 36. Based on the jury's finding that the

narcotics conspiracy involved less than 5 grams of crack cocaine, the offense level for the Group 1 convictions would be 24. Id. However, because the offense conduct resulted in the murder of Joseph Coppedge, which would have constituted murder under 18 U.S.C. § 1111 if it had occurred within the territorial or maritime jurisdiction of the United States, the PSR noted that U.S.S.G. § 2D1.1(d)(1) provided for a cross-reference to the first-degree murder Guidelines section, § 2A1.1, and that therefore the base offense level for the Group 1 convictions – the RICO conspiracy and the narcotics conspiracy – was 43. Id.

With respect to calculating the based offense level for Group 2, which consisted only of the conspiracy to commit murder in aid of racketeering, the PSR noted that the applicable Guidelines section was U.S.S.G. § 2E1.3, which in turn directed that the Guideline for the underlying racketeering activity be used. Id. ¶ 42. Because the underlying activity was conspiracy to commit murder, the applicable Guidelines section was U.S.S.G. § 2A1.5, which in turn directed that if the offense resulted in the death of a victim, the first-degree murder Guideline should be used, § 2A1.1 Id. Because the conspiracy to commit murder in aid of racketeering offense allegedly resulted in the murder of Joseph Coppedge, the base offense level for the Group 2 conviction in this case was 43, the highest offense level

provided for by the Guidelines. Id. The PSR calculated that
Aller had a criminal history category of II. Id. ¶ 57.

Based on the total offense level of 43 and the criminal
history category of II, the PSR noted that the guidelines range
for imprisonment was Life, which was superseded by the statutory
maximum terms of imprisonment pursuant to U.S.S.G.
§ 5G1.1(c)(1). Id. ¶ 87. The statutory maximum for the RICO
conspiracy conviction was 20 years' imprisonment; the statutory
maximum for the narcotics conspiracy conviction was 20 years'
imprisonment; and the statutory maximum for the murder in aid of
racketeering conviction was 10 years' imprisonment. Id. ¶¶ 84-
86.

At sentencing on September 26, 2003, Judge Martin noted
that the drug quantity had not been calculated in the PSR in
connection with the narcotics conspiracy conviction. Sent. Tr.
at 4. The Government noted that the drug quantity was immaterial
to sentencing in this case, because the Guidelines for the
narcotics conspiracy were calculated not by reference to the
drug quantity but by a cross-reference contained in U.S.S.G.
§ 2D1.1, which provides that if a victim is murdered in a
narcotics conspiracy, the offense level should be calculated by
reference to the murder guidelines. Sent. Tr. at 4-5. Judge
Martin agreed, noting that in this case, the drug quantity "will

affect neither the guideline range nor in my view the conditions of confinement." Sent. Tr. at 5.

At sentencing, Aller argued for a downward departure pursuant to United States v. Rahman, 189 F.3d 88 (2d Cir. 1999) (per curiam), which the Government opposed.[2] Judge Martin stated that he did "not think this is an appropriate case to depart below the guideline [range] as set forth in the presentence report" because "the bottom line is two people are dead." Sent. Tr. at 13. Judge Martin stated that although there were some "commendable portions of Mr. Aller's life, as is reflected in the correspondence from his family, . . . none that can outweigh the impact, the seriousness of the crime he committed." Sent. Tr. at 13. As a result, Judge Martin sentenced Aller principally to the statutory maximum of consecutive terms of imprisonment of 20 years on Count Two, 20 years on Count Three, and 10 years on Count Four, for a total of 50 years' imprisonment. Sent. Tr. at 14.

Aller then appealed the sentence and conviction on various grounds relating to jury instructions and the sufficiency of evidence. See United States v. McAllister, 112 F. App'x 771,

---

[2] In Rahman, the Court of Appeals found that a district court judge has "discretion to depart downward to sentence concurrently where the guidelines call for consecutive sentencing." 189 F.3d at 157. One such basis for a district court to exercise discretion and depart downwardly would be if a sentence would otherwise "be extended by multiplication of essentially duplicative charges for a single criminal act. Id.

773-74 (2d Cir. 2004). The Court of Appeals affirmed the judgment of conviction, but stayed the mandate pending the Supreme Court's resolution of United States v. Booker. Id.

### D.

Following the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the case was remanded to the district court for further proceedings pursuant to United States v. Crosby, 397 F.3d 103 (2005). Because Judge Martin had retired, the case was reassigned to Judge Thomas P. Griesa. After receiving submissions from the parties in connection with resentencing, Judge Griesa proceeded to resentencing on May 28, 2009.

The Probation Department prepared a PSR prior to re-sentencing that was substantially the same one used by Judge Martin at the initial sentencing.

At resentencing, Judge Griesa first asked the parties about the predicate acts for the RICO conspiracy charge on Count Two. Resent. Tr. at 2-3. Defense counsel noted that because Aller was found guilty of a narcotics conspiracy on Count Three and a conspiracy to murder Joseph Coppedge on Count Four, those two acts formed the predicate acts for the RICO conspiracy on Count Two. Resent. Tr. at 4-5.

Judge Griesa then turned to the issue of Aller's offense level. Judge Griesa noted that, as was the case in the original

PSR, the revised PSR calculated a total offense level of 43.
Resent. Tr. at 6. Judge Griesa asked the parties whether the
offense level for all three counts of conviction was 43. Resent.
Tr. at 7. In response, the Government noted that although there
was a dispute about the drug quantity that should be attributed
to Aller for the narcotics conspiracy conviction, the issue of
the drug quantity did not need to be resolved because there was
a victim who was actually killed as a result of the narcotics
conspiracy, and therefore the death of Joseph Coppedge
controlled the calculation of the Aller's offense level for the
narcotics conspiracy conviction pursuant to the Guidelines
cross-references. Resent. Tr. at 7-8.

Defense counsel noted that if the narcotics conspiracy in
Count Three were charged independently and the resulting death
of Joseph Coppedge not taken into account, the offense level
would be quite low because the drug quantity was "less than five
grams of cocaine." Resent. Tr. at 12. Judge Griesa noted that
the Court could find different facts than what the jury found in
connection with the quantity of narcotics involved. Resent. Tr.
at 23. In particular, Judge Griesa noted that his "understanding
of the trial record is that the amount of narcotics involved in
this conspiracy was considerably greater than what the jury
found," but also agreed with defense counsel that Judge Martin
had not made specific findings about the quantity of drugs

involved in the narcotics conspiracy for which Aller was
convicted. Resent. Tr. at 23, 28. Judge Griesa stated that he
would not make findings about the quantity of drugs. Resent. Tr.
at 28.

Judge Griesa also noted that Judge Martin had not made
specific findings at sentencing with respect to the death of
Kiron Little, but agreed with the Government's characterization
that Judge Martin had noted in the context of sentencing that
"two people are dead here, and then he said one person/two
people, that really doesn't make a difference." Resent. Tr. at
25.

With respect to the RICO conspiracy conviction, Judge
Griesa stated that the RICO conspiracy on Count Two "had to
relate to something, and I think everyone recognizes that one of
the things it had to relate to, according to the jury findings,
is the conspiracy to murder Joseph Coppedge." Resent. Tr. at 30.
Judge Griesa then found that the presence of the conviction for
conduct related to the conspiracy to murder Joseph Coppedge
meant that there was an offense level under the Guidelines of
43, which meant that the sentence under the Guidelines was life
imprisonment. Resent. Tr. at 30. Judge Griesa then noted that
the statutes under which Aller was convicted did not allow for a
life sentence, but rather that the statutory maximum term of
imprisonment for Count Two was 20 years; the statutory maximum

10

term of imprisonment for Count Three was 20 years; and the
statutory maximum term of imprisonment for Count Four was 10
years. Resent. Tr. at 30. Judge Griesa noted that it was
nevertheless "incumbent on the Court to consider what a proper
guidelines' sentence would be, and such a sentence would be to
use the individual counts to come as close to life imprisonment
as could be done. That would be application of guidelines."
Resent. Tr. at 30-1.

Judge Griesa acknowledged that the "guidelines currently,
under existing case law, are advisory, and the Court is not
bound to follow the guidelines." Resent. Tr. at 31. Judge Griesa
stated that he was nonetheless "obliged to take the guidelines
seriously and give them serious consideration, and the Court in
order to impose a nonguidelines' sentence must have reasons for
doing so. And the usual resort and the legally required resort
is to the factors outlined in 18, United States Code, Section
3553." Resent. Tr. at 31. Judge Griesa noted that the "primary
factor to be considered is the nature and circumstances of the
offense" and "one of those offenses was the commission of
murder" that was "committed in connection with activity of a
gang or group which was involved in the sale of narcotics.
Resent. Tr. at 31-32. Judge Griesa stated that it was
"impossible for the Court to say that the nature of the offense,
as defined and referred to in Section 3553, would not be serious

enough to justify life imprisonment or a sentence as close to life imprisonment as could be imposed within the statutory strictures." Resent. Tr. at 32. After considering other factors, including the defendant's submissions concerning his personal evolution in prison and his difficult upbringing, Judge Griesa decided that he would re-impose the sentence that Judge Martin had imposed, namely 20 years' imprisonment on Count Two, 20 years' imprisonment on Count Three, and 10 years' imprisonment on Count Four, all to be served consecutively. Resent. Tr. at 33-34.

Following the imposition of the sentence, Aller again appealed on various grounds including that Aller's sentence was substantively unreasonable because it was disproportionate to the sentence imposed on his co-defendants and that the district court erred in calculating Aller's base offense level when it relied on acquitted conduct, namely the murder of Joseph Coppedge. See United States v. Aller, 384 F. App'x 34, 35-36 (2d Cir. 2010). The Court of Appeals rejected all of Aller's arguments. Id. Aller subsequently petitioned for a writ of certiorari in the United States Supreme Court. On December 13, 2010, the Supreme Court denied the writ, at which point Aller's sentence and conviction became final. See Aller v. United States, 562 U.S. 1118 (2010).

**E.**

Aller subsequently filed a timely motion pursuant to 28 U.S.C. § 2255 on December 13, 2011 raising five challenges to his conviction and sentence.[3]

First, Aller argued that his appellate counsel violated his Sixth Amendment right to effective assistance by failing to focus on an alleged error by Judge Griesa on re-sentencing in assuming that a guidelines sentence was presumptively reasonable. See Aller v. United States, No. 11-cv-9089, 2015 WL 1963611, at *4 (S.D.N.Y. Apr. 30, 2015). Second, Aller argued that his trial counsel was constitutionally ineffective by failing to investigate allegations of misconduct while Aller was in prison, by failing to investigate a potential alibi, and by failing to call a potential alibi witness. Id. Third, Aller argued that his trial counsel was constitutionally ineffective by failing to seek a jury charge that the motive element for conspiracy to commit murder in aid of racketeering must be found unanimously. Id. Fourth, Aller argued that his trial counsel was constitutionally ineffective by failing to seek a jury charge that the jury was required to agree unanimously on what type of act Aller agreed to conspire to commit that formed the predicate

---

[3] This Section 2255 motion was opened on civil docket No. 11-cv-9089 (S.D.N.Y.) before Judge Griesa.

13

of the RICO conspiracy charge. Id. at *5. Finally, Aller again argued that the district court erred when calculating his base offense level when it relied on the fact that the conspiracy to commit murder in aid of racketeering resulted in the death of a victim because the jury acquitted the petitioner on the substantive murder counts. Id.

Judge Griesa denied the petition in full. Id. at *13. In denying the petition on the first issue, the court noted that Aller's argument misrepresented the record at resentencing, at which time the court "imposed a 50-year sentence not because it considered a Guidelines sentence to be 'presumptively reasonable,' but because the nature and circumstances of the offenses, as well as the other Section 3553 factors, merited such a sentence." Id. at *6. With respect to the fifth argument, the court first noted that the issue of whether Judge Martin could take into account Aller's acquitted conduct related to the deaths of Coppedge and Little had already been litigated on direct appeal, thus precluding Aller from raising the issue on collateral attack. Id. at *13. The Court went on to find that, in any event, the argument was without merit given post-Booker cases establishing that a sentencing judge could find facts relevant to sentencing, including evidence of acquitted conduct, by a preponderance of the evidence. Id.

14

Judge Griesa issued a certificate of appealability with respect to two of the issues raised by Aller: 1) whether trial counsel was constitutionally ineffective by failing to request a jury instruction that the jury needed to agree unanimously on which specific motive Aller possessed when he committed the offense underlying the charge that he conspired to commit murder in aid of racketeering; and 2) whether trial counsel was constitutionally ineffective because he failed to seek an instruction that, in considering the RICO conspiracy charge, the jury had to agree unanimously on which predicate acts Aller agreed to conspire to commit. Id. at *13. The Court of Appeals subsequently affirmed the order of Judge Griesa denying the petition on the two grounds for which Judge Griesa had issued a certificate of appealability. See Aller v. United States, 646 F. App'x 21, 24 (2d Cir. 2016).

Notwithstanding the fact that Aller had made one motion pursuant to 28 U.S.C. § 2255, the Court of Appeals permitted Aller to make an amended motion pursuant to Section 2255 as a second or successive petition, which Aller made on December 7, 2016.[4]

In his 28 U.S.C. § 2255 motion before Chief Judge McMahon, Aller principally argued that the Supreme Court's decision in

---

[4] This petition was opened on docket No. 16-cv-9504 (S.D.N.Y.), and was reassigned to Chief Judge Colleen McMahon.

Johnson v. United States, 576 U.S. 591 (2015), had effectively invalidated the statutes and Guidelines on which his sentence was based. See Aller v. United States, No. 16-cv-9504, 2018 WL 4579829, at *1 (S.D.N.Y. Aug. 17, 2018). Chief Judge McMahon found that none of the three statutes under which Aller was convicted in this case was affected by Johnson or the Supreme Court's subsequent decision in Sessions v. Dimaya, 138 S. Ct. 1204 (2018). See id. at *2-3. Aller also challenged the application of the Guidelines on the ground that the applicable Guidelines for determining the base offense level for murder-related racketeering charges were unconstitutionally vague in light of Johnson, but Chief Judge McMahon found that this argument was foreclosed by Beckles v. United States, 137 S. Ct. 886 (2017). Id. at *3.

Chief Judge McMahon also denied the part of Aller's motion in which Aller again raised the issue that the sentencing judge had taken into account acquitted conduct because Aller had not shown that there was new intervening law that would result in a different disposition of the question he had previously raised and lost on direct appeal. See id. Chief Judge McMahon denied the part of Aller's motion in which Aller argued that there was an error made with respect to the calculation of the quantity of drugs involved in his conviction on Count Three because Aller defaulted that issue by failing to raise it on direct appeal and

by failing to demonstrate cause and prejudice for that failure. See id. at *4. Finally, the court denied the part of Aller's motion in which he argued that the Government failed to prove beyond a reasonable doubt that the district court had subject matter jurisdiction over the case on the ground that there was insufficient evidence to satisfy the federal jurisdictional element because Aller failed to raise the issue on direct appeal and that, in any event, the record showed that the enterprise spanned New York, Massachusetts, and Virginia. See id.

## F.

On November 15, 2018, the criminal docket in this case, No. 00-cr-977 (S.D.N.Y.), was reassigned to this Court. Now pending before the Court are three motions made by Aller. In the first motion, brought pro se, Aller moves to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2).[5] Second, Aller, again proceeding pro se, petitions for a writ of audita querela. Finally, Aller moves under Section 404 of the First Step Act, to reduce his sentence on Count Three, for which he was convicted

---

[5] Aller moved the Court to appoint counsel for him in connection with this motion. Dkt. No. 132. The Court denied the motion to appoint counsel without prejudice "for failure to make the required showing at this time." Dkt. No. 135. To the extent that Aller renews his motion to appoint counsel in connection with his motion under 18 U.S.C. § 3582(c)(2), that motion is **denied** for the same reasons previously given by the Court.

of conspiracy to distribute and possess with intent to
distribute crack cocaine.[6]

## II.

Aller first moves under 18 U.S.C. § 3582(c)(2) and
Amendment 591 to the United States Sentencing Guidelines for a
reduced sentence.

## A.

In general, a court "may not modify a term of imprisonment
once it has been imposed" subject to a few limited exceptions.
See 18 U.S.C. § 3582(c). One such exception exists for "a
defendant who has been sentenced to a term of imprisonment based
on a sentencing range that has subsequently been lowered by the
Sentencing Commission pursuant to 28 U.S.C. [§] 994(o)," in
which case, "the court may reduce the term of imprisonment,
after considering the factors set forth in section 3553(a) to
the extent that they are applicable, if such a reduction is
consistent with applicable policy statements issued by the
Sentencing Commission." 18 U.S.C. § 3582(c)(2). When considering
a motion to reduce a sentence pursuant to Section 3582(c)(2), a
district court's analysis must "begin by 'determin[ing] the
amended guideline range that would have been applicable to the

---

[6] Aller requested that the Court appoint counsel to represent him in
connection with his application under the First Step Act. Pursuant to that
request, the Court appointed the Federal Defenders of New York to represent
Aller. Dkt. No. 140.

defendant' had the relevant amendment been in effect at the time
of the initial sentencing." Dillon v. United States, 560 U.S.
817, 827 (2010) (quoting  U.S.S.G. § 1B1.10(b)(1)).

Amendment 591 to the United States Sentencing Guidelines is
one of the amendments upon which a motion pursuant to Section
3582(c)(2) may be based. See U.S.S.G. § 1B1.10(d) (listing
"Covered Amendments"). "Prior to Amendment 591, a court could
consider actual (i.e., relevant) conduct when selecting the
applicable offense guideline section." United States v. Rivera,
293 F.3d 584, 585 (2d Cir. 2002). Amendment 591, which became
effective on November 1, 2000, "requires that the initial
selection of the offense guideline be based only on the statute
(or offense) of conviction rather than on judicial findings of
actual conduct . . . that will never be made by the jury." Id.
"The Amendment was intended to 'emphasize that the sentencing
court must apply the offense guideline referenced in the
Statutory Index [at the back of the Sentencing Guidelines
Manual] for the statute of conviction.'" Id. (quoting U.S.S.G.
Manual, Supp. to App. C, amend. 591, cmt. at 32 (Nov. 1, 2000)).
"The plain wording of Amendment 591 applies only to the choice
of the applicable offense guideline, not to the subsequent
selection of the base offense level." Id. at 586 (emphasis in
original); see also Poindexter v. United States, 556 F.3d 87, 90
(2d Cir. 2009) (per curiam) ("Amendment 591 is limited in scope

to the determination of the applicable offense guideline in Chapter Two of the Sentencing Guidelines. Base offense level calculations . . . are governed by other parts of the Guidelines.").

**B.**

As an initial matter, Aller's motion under Section 3582(c) must be denied because Amendment 591 became effective on November 1, 2000, nearly three years before Aller's initial sentencing before Judge Martin on September 26, 2003, and eight-and-a-half years before Aller's re-sentencing before Judge Griesa on May 28, 2009. Aller cannot make a motion under 18 U.S.C. § 3582(c)(2) based on an Amendment that became effective prior to his sentencing. See United States v. Garcia, No. 96-cr-760-1, 2009 WL 5179608, at *1 (S.D.N.Y. Dec. 30, 2009) ("Amendment 591 became effective on November 1, 2000, before Garcia was sentenced on February 27, 2001, and thus the statute on which he relies, 18 U.S.C. § 3582(c)(2), does not permit a sentence modification.").

In any event, the base offense level calculated in this case and the sentence imposed by the district court were consistent with Amendment 591 and with the Guidelines more generally.[7]

---

[7] Because Judge Griesa imposed the sentence that Aller is now serving and signed the operative judgment against Aller, the remainder of this opinion

In this case Aller was convicted of participating in a RICO conspiracy, in violation of 18 U.S.C. § 1962(c); participating in a narcotics conspiracy in violation of 21 U.S.C. § 846, to distribute and possess with the intent to distribute less than five grams of crack cocaine based on the jury's findings in violation of 21 U.S.C. § 841(b)(1)(C); and participating in a conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). In calculating the base offense levels to be used at sentencing, the district court relied on the PSR, which found that the applicable offense guideline for the RICO conspiracy was U.S.S.G. § 2E1.1 (Unlawful Conduct Relating to Racketeering Influenced and Corrupt Organizations); the applicable offense guideline for the narcotics conspiracy was U.S.S.G. § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses; Attempt or Conspiracy); and the applicable offense guideline for the conspiracy to murder in aid of racketeering was U.S.S.G. § 2E1.3 (Violent Crimes in Aid of Racketeering).

Aller does not argue that the district court erred when using these Guidelines as the applicable offense Guidelines for the three Counts of conviction. Indeed, the district court

---

will refer to Judge Griesa as the "district court" except when further clarification is necessary.

properly made the "<u>initial</u> selection of the offense guideline .
. . based only on the statute (or offense) of conviction rather
than on judicial findings of actual conduct . . . that [were]
never . . . made by the jury." <u>Rivera</u>, 293 F.3d at 585 (emphasis
added).

Rather, Aller principally argues that the district court
erred by using cross-references contained in the applicable
Guidelines for Counts Two, Three, and Four to elevate Aller's
base offense level to 43.

However, in this case, the district court properly applied
cross-references contained in the applicable Guidelines. The
RICO Guideline provides that when calculating the base offense
level, the district court should apply the greater of either
"(1) 19; or (2) the offense level applicable to the underlying
racketeering activity." U.S.S.G. § 2E1.1(a). As the district
court found, the underlying racketeering activity was the
narcotics conspiracy conviction in Count Three. The narcotics
Guideline provides, in turn, that when calculating the base
offense level, "if a victim was killed under circumstances that
would constitute murder under 18 U.S.C. § 1111 had such killing
taken place within the territorial or maritime jurisdiction of
the United States, [the district court should] apply § 2A1.1
(First Degree Murder) or § 2A1.2 (Second Degree Murder), as
appropriate, if the resulting offense level is greater than that

22

determined under this guideline." U.S.S.G. § 2D1.1(d)(1). The Violent Crimes in Aid of Racketeering Activity Guideline applicable to the conviction in Count Four provides that when calculating the base offense level, the district court should apply the greater of either "(1) 12; or (2) the offense level applicable to the underlying crime or racketeering activity." U.S.S.G. § 2E1.3(a).

Applying the cross-references explicitly provided for in the applicable guidelines, the district court found that the racketeering activity underlying the RICO conspiracy charged in Count Two was the narcotics conspiracy charged in Count Three, and that Aller's actual conduct in connection with the narcotics conspiracy resulted in the death of Joseph Coppedge such that his murder would have been a violation of 18 U.S.C. § 1111 had the murder taken place within the territorial or maritime jurisdiction of the United States, which therefore provided for a reference to U.S.S.G. § 2A1.1, which in turn provided for a base offense level of 43. See PSR ¶ 36. The district court further found that, as provided for in U.S.S.G. § 2E1.3(a)(2), the racketeering activity underlying the conspiracy to murder in aid of racketeering conviction in Count Four was the murder of Joseph Coppedge, and thus the first-degree murder Guideline, U.S.S.G. § 2A1.1, would be used to calculate the base offense level for Count Four to be 43. Id. ¶ 42.

In making these determinations, the district court properly applied the cross-references explicitly provided for in the Guidelines provisions applicable to Aller's counts of conviction by taking into account Aller's actual conduct, namely the murder of Joseph Coppedge. Moreover, the district court's application of the cross-references was not improper simply because the jury acquitted Aller on Counts Five and Six, which charged, respectively, substantive murder in aid of racketeering and murder while engaged in drug trafficking, both of which alleged that Aller had murdered Coppedge. The district court was permitted to take into account Aller's murder of Joseph Coppedge at sentencing even though the jury acquitted Aller of that conduct in other respects. See United States v. Johnson, 507 F.3d 793, 797 (2d Cir. 2007) (finding post-Booker that "district courts may find facts relevant to sentencing—as opposed to elements of the offense—by a preponderance of the evidence and in so doing may take into account acquitted conduct when sentencing defendants."). Having heard all the evidence, Judge Martin could find that the defendant was responsible for the murder of Joseph Coppedge, and Judge Griesa, having reviewed the record, could reach the same conclusion.

The fact that the district court calculated Aller's base offense level through cross-references to other Guidelines provisions explicitly provided for in the applicable Guidelines

by taking into account acquitted conduct, namely Aller's murder
of Joseph Coppedge, was therefore consistent with Amendment 591.
See United States v. Collins, No. 3:95-cr-232, 2016 WL 11646751,
at *6 (N.D.N.Y. Oct. 25, 2016) (collecting cases and stating
that "Amendment 591 does not affect a court's ability to use
underlying activity 'in the course of applying cross references
that appear in offense guidelines designated by the statutory
index.'") (quoting United States v. Hurley, 374 F.3d 38, 40-41
(1st Cir. 2004) (per curiam)); United States v. Rodriguez, No.
93-cr-339, 2009 WL 2033087, at *2 (S.D.N.Y. July 8, 2009)
(collecting cases holding that Amendment 591 does not prohibit
the use of cross references specifically provided for by the
Guidelines).

Because Amendment 591 became effective prior to both
Aller's initial sentencing before Judge Martin and his re-
sentencing before Judge Griesa, and because, in any event, the
district court imposed a sentence consistent with Amendment 591,
Aller's motion for a reduction of sentence pursuant to 18 U.S.C.
§ 3582(c) is **denied.**

### III.

Aller petitions for a writ of audita querela pursuant to
the All Writs Act, 28 U.S.C. § 1651. In bringing the petition,
Aller argues 1) that the sentencing court erred when it imposed
consecutive sentences on Counts Two and Three, both of which

were grouped together pursuant to U.S.S.G. § 3D1.2 of the
Sentencing Guidelines; 2) that the conviction on Count Three for
narcotics conspiracy cannot support a cross-reference under
U.S.S.G. § 2A1.1, the Guidelines provision governing first-
degree murder, because the conduct on Count Three had no nexus
with the murder of Coppedge; and 3) that, more generally, the
first-degree murder Guidelines, U.S.S.G. § 2A1.1, could not be
lawfully applied to calculate the sentencing range for the
convictions on Counts Two, Three, or Four. The petition is
**denied.**

### A.

"A writ of audita querela is an extraordinary remedy under
the All Writs Act, 28 U.S.C. § 1651(a)[.]" Persico v. United
States, 418 F. App'x 24, 25 (2d Cir. 2011). "The writ has been
abolished with respect to civil cases, but it remains available
in limited circumstances with respect to criminal convictions."
United States v. Richter, 510 F.3d 103, 104 (2d Cir. 2007) (per
curiam) (internal citation omitted). Specifically, a writ of
audita querela might lie if it "were necessary to avoid serious
questions as to the constitutional validity of both § 2255 and
§ 2244 – if, for example, an actually innocent prisoner were
barred from making a previously unavailable claim under § 2241
as well as § 2255." Triestman v. United States, 124 F.3d 361,
380 n.24 (2d Cir. 1997), abrogated on other grounds by Bousley

26

v. United States, 523 U.S. 614 (1998), as recognized in Rosario
v. United States, 164 F.3d 729 (2d Cir. 1998). "In other words,
if the absence of any avenue of collateral attack would raise
serious constitutional questions about the laws limiting those
avenues, then a writ of audita querela would lie." Richter, 510
F.3d at 104.

In this case, Aller directly appealed the judgment against
him after he was sentenced by Judge Griesa, and after the Court
of Appeals affirmed his conviction and sentence, he brought a
petition for a writ of certiorari to the Supreme Court. After
his petition for a writ of certiorari was denied, Aller then
brought two motions pursuant to 28 U.S.C. § 2255 challenging
various aspects of his conviction and sentence. Aller has had
ample opportunity to raise the claims in his petition for a writ
of audita querela in previous proceedings.

The fact that Aller would be barred from bringing the
claims raised in his petition for a writ of audita querela in a
successive habeas petition without complying with the
requirements of 28 U.S.C. § 2244(b)(3) does not mean that Aller
lacks another avenue of collateral attack, namely through a
petition for habeas corpus. See Reese v. United States, No. 11-
cv-3813, 2011 WL 3648373, at *2 (E.D.N.Y. Aug. 17, 2011) ("In
particular, the statutory limits on second or successive habeas
petitions do not create a 'gap' in the post-conviction framework

that could make audita querela relief necessary.") (collecting cases). Moreover, Aller does not point to any intervening law that has arisen between his conviction and the current petition that would call into question the legality of Aller's conviction and sentence. All of the claims that Aller raises in his <u>audita querela</u> petition existed at the time of his direct appeals and his two Section 2255 motions, and therefore Aller cannot point to a "legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction and that is not redressable pursuant to another post-conviction remedy." <u>United States v. LaPlante</u>, 57 F.3d 252, 253 (2d Cir. 1995).

**B.**

In any event, the three claims for relief raised by Aller in his <u>audita querela</u> petition are without merit.

With respect to his first claim, Aller does not point to any authority that forbids a district court from imposing sentences to run consecutively on separate counts that are grouped together pursuant to U.S.S.G. § 3D1.2, which the district court did in this case with respect to Counts Two and Three.

The district court sentenced Aller on Count Two and Count Three consistent with the Guidelines and statutory provisions. The Guidelines provide that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the

total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law." U.S.S.G. § 5G1.2(d). Similarly, 18 U.S.C. § 3584(a) provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt." As discussed above in connection with Aller's motion pursuant to 18 U.S.C. § 3582(c), the district court correctly calculated a base offense level of 43 in this case, and therefore the sentence recommended by the Guidelines was Life. Because Counts Two, Three, and Four carried statutory maximum punishments of, respectively 20 years' imprisonment, 20 years' imprisonment, and 10 years' imprisonment, the district court acted well within its discretion in imposing sentences on the three counts of conviction to run consecutively up to the statutory maximum in order to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3584(b) ("The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each

offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)."). As the district court noted at re-sentencing, although there were commendable and mitigating parts of Aller's record, the conduct at issue, which resulted in death, was very serious and warranted a sentence at the statutory maximum. There was therefore no error when the district court imposed a sentence on the three Counts of conviction to run consecutively up to the statutory maximum. Cf. United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2010) (en banc) ("As to substance [appellate courts] will not substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case.").

Aller's second and third claims of relief in his audita querela petition concern the application of the cross-references to the first-degree murder Guideline, U.S.S.G. § 2A1.1, to calculate the base offense level of 43 on all three Counts of conviction. As discussed above in connection with Aller's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), the district court properly took into account facts proved by a preponderance of the evidence although not found by the jury, principally Aller's murder of Joseph Coppedge, to use cross-references to the first-degree murder Guideline, U.S.S.G. § 2A1.1.

Aller's specific argument that there was no nexus between the murder of Joseph Coppedge and the conviction on Count Three for a narcotics conspiracy has no merit because there was sufficient evidence from which the district court could conclude by a preponderance of the evidence that the murder of Joseph Coppedge was in furtherance of the narcotics conspiracy charged in Count Three. See, e.g., United States v. Martinez, No. 10-cr-233S (1), 2016 WL 4425041, at *4 (W.D.N.Y. Aug. 22, 2016).

Because the extraordinary writ of audita querela is unavailable to Aller in this case and because, in any event, Aller's claims brought under his audita querela petition are without merit, the petition is **denied.**

**IV.**

Aller moves under Section 404 of the First Step Act of 2018 to reduce his sentence on Count Three for participating in a conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C).

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), affected certain sentences that were previously imposed for offenses involving crack cocaine pursuant to 21 U.S.C. § 841. Section 841 is divided principally into two subsections. As relevant, Section 841(a) specifies that "it shall be unlawful for any person knowingly or intentionally—(1)

31

to manufacture, distribute, or dispense, or possess with intent
to manufacture, distribute, or dispense, a controlled
substance[.]" 21 U.S.C. § 841(a). The second section, Section
841(b), then sets out the penalties for violations of Section
841(a). As currently written, Section 841(b)(1)(A)(iii) provides
that anyone who commits a violation of Section 841(a) involving
"280 grams or more of a mixture or substance . . . which
contains cocaine base" shall be subject to the penalties set out
in Section 841(b)(1)(A). As currently written, Section
841(b)(1)(B)(iii) provides that anyone who commits a violation
of Section 841(a) involving "28 grams or more of a mixture or
substance . . . which contains cocaine base" shall be subject to
the penalties set out in Section 841(b)(1)(B). Finally, as
currently written, Section 841(b)(1)(C) provides that anyone who
commits a violation of Section 841(a) involving "a controlled
substance in schedule I or II . . ., except as provided in
[Section 841(b)(1)(A), Section 841(b)(1)(B), and Section
841(b)(1)(D)]" shall be subject to the penalties set out in
Section 841(b)(1)(C).

The Fair Sentencing Act of 2010 changed the threshold drug
quantities that trigger penalty ranges for crack cocaine
offenses enumerated in 21 U.S.C. § 841(b)(1). See Pub. L. No.
111-220, § 2(a), 124 Stat. 2372, 2372 (Aug. 3, 2010); United
States v. Holloway, 956 F.3d 660, 662 (2d Cir. 2020). Section 2

of the Fair Sentencing Act increased the threshold quantity for
a conviction under § 841(b)(1)(A) from 50 to 280 grams of crack
cocaine and increased the threshold quantity for a conviction
under § 841(b)(1)(B) from 5 to 28 grams of crack cocaine. See
Pub. L. No. 111-220, § 2(a), 124 Stat. at 2372. The Fair
Sentencing Act did not apply retroactively to defendants, like
Aller, who had been sentenced before the Act went into effect.
See Holloway, 956 F.3d at 662; Dorsey v. United States, 567 U.S.
260, 264 (2012).

The First Step Act made the Fair Sentencing Act retroactive
by providing that "[a] court that imposed a sentence for a
covered offense may, on motion of the defendant, the Director of
the Bureau of the Prisons, the attorney for the Government, or
the court, impose a reduced sentence as if sections 2 and 3 of
the Fair Sentencing Act of 2010 were in effect at the time the
covered offense was committed." Pub. L. No. 115-391, § 404(b),
132 Stat. 5194, 5222 (citation omitted). The First Step Act, in
turn, defines a "covered offense" as "a violation of a Federal
criminal statute, the statutory penalties for which were
modified by section 2 or 3 of the Fair Sentencing Act of 2010
that was committed before August 3, 2020." § 404(a), 132 Stat.
at 5222.

Section 404(c) of the First Step Act "limits its
application only by preventing courts from hearing motions if

33

(1) the sentence in question 'was previously imposed or previously reduced' in accordance with the relevant provisions of the Fair Sentencing Act, or (2) if a previous motion was made under the First Step Act and denied 'after a complete review of the motion on the merits'" and the First Step Act further provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Holloway, 956 F.3d at 662-63 (quoting Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222).

Thus, in order to be eligible for relief under the First Step Act, a defendant must show only that he was sentenced for "covered offense", the definition of which includes that the violation of the statute was committed before August 3, 2010, and that the defendant is not subject to the textual limitations enumerated in Section 404(c) of the First Step Act. See Holloway, 956 F.3d at 664.

At issue in this case is whether Aller's conviction on Count Three for a narcotics conspiracy in violation of 21 U.S.C. § 846, to distribute and possess with the intent to distribute less than five grams of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(C), is a "covered offense."[8] Whether a defendant was

---

[8] The parties agree that Aller is not precluded from a sentencing reduction based on the limitations in Section 404(c) of the First Step Act. There is also no question that the conviction in question, the conviction on Count Three, was based on conduct that occurred prior to August 3, 2010.

sentenced for a "covered offense" within the meaning of the First Step Act turns on "the statute under which a defendant was convicted, not the defendant's actual conduct[.]" United States v. Johnson, 961 F.3d 181, 187 (2d Cir. 2020) (collecting cases from other courts of appeals). This result follows from the text of the statute, which, as the Second Circuit Court of Appeals has noted, is most naturally read such that "'Federal criminal statute' is the antecedent of the limiting clause, 'the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act.'" Id. at 189. Thus, a defendant is entitled to relief under the First Step Act "if the statutory penalties associated with a particular 'Federal criminal statute' were modified by Section 2 or 3 of the Fair Sentencing Act." Id.

The Government argues that Aller's conviction is not a "covered offense" because although Aller was charged in Count Three of the indictment with conspiring to distribute and possess with the intent to distribute more than 5 kilograms of cocaine and 50 grams and more of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A), the jury found that the offense conduct involved less than 5 grams of cocaine base, which was a violation only of Section 841(b)(1)(C), and Section 2 of the Fair Sentencing Act did not "modif[y]" the statutory penalties of Section 841(b)(1)(C).

The Second Circuit Court of Appeals has not yet ruled on whether a crack cocaine conviction whose statutory penalty is not provided by Section 841(b)(1)(A) or Section 841(b)(1)(B), but instead is provided by Section 841(b)(1)(C), is a "covered offense" under Section 404 of the First Step Act. However, the First Circuit Court of Appeals has recently addressed this precise question.

In United States v. Smith, 954 F.3d 446, 449 (1st Cir. 2020), the First Circuit Court of Appeals found that the phrase "Federal criminal statute" referred to in Section 404 of the First Step Act is either § 841 as a whole or only § 841(a), the latter of which describes the conduct necessary to violate § 841. In coming to this conclusion, the court rejected the Government's argument that the subsections of § 841(b)(1) set out different "Federal criminal statute[s]" for purposes of Section 404 of the First Step Act, such that § 841(b)(1)(A) and § 841(b)(1)(B) would be covered offenses under Section 404 of the First Step Act while § 841(b)(1)(C) would not be. Id. The Court found that the straightforward structure of § 841 provided that § 841(a) set out the offense conduct and § 841(b) set out the statutory penalties associated with that conduct. Id. at 449-50.

Having found that the relevant "Federal criminal statute" is either § 841 or § 841(a), the First Circuit Court of Appeals

then concluded that a violation of §§ 841(a)(1) and (b)(1)(C)
was a "covered offense" under Section 404 of the First Step Act.
Id. at 450. The court noted that § 841(b)(1)(C), which applies
to any "case of a controlled substance . . . except as provided
in subparagraphs (A), (B), and (D)[,]" was in fact "modified" by
the Fair Sentencing Act, although not expressly, because
§ 841(b)(1)(C) covered quantities of crack cocaine between zero
and five grams prior to the Fair Sentencing Act and between zero
and twenty-eight grams of crack cocaine after the Fair
Sentencing Act. Id. The Fourth Circuit Court of Appeals has
recently come to the same conclusion, see United States v.
Woodson, 962 F.3d 812, 817 (4th Cir. 2020), although the only
other Court of Appeals to have considered the issue in a
precedential opinion disagrees, see United States v. Birt, 966
F.3d 257, 265 (3d Cir. 2020).

The reasoning of Smith that a Section 841(b)(1)(C) crack
cocaine violation is a "covered offense" is persuasive. The
relevant question is whether the statutory penalties for crack
cocaine offenses provided in Section 841(b)(1)(C) were
"modified" by the Fair Sentencing Act. Because a Section
841(b)(1)(C) crack cocaine offense would cover conduct in which
the jury found between zero and 5 grams of crack cocaine
attributable to the defendant prior to the Fair Sentencing Act,
while a Section 841(b)(1)(C) crack cocaine offense would cover

conduct in which the jury found between zero and 28 grams of crack cocaine attributable to the defendant subsequent to the Fair Sentencing Act, the statutory penalties for crack cocaine offenses provided in Section 841(b)(1)(C) were "modified" by the Fair Sentencing Act. See Smith, 954 F.3d at 450 ("The term 'modified,' given its ordinary meaning, includes any change, however slight.") (citing MCI Telecomms. Corp. v. Am. Tel & Tel Co., 512 U.S. 218, 225 (1994)).

The fact that defendants like Aller might seem to gain a "procedural windfall" from this reading of the First Step Act is not a basis to find defendants like Aller ineligible for relief. See Johnson, 961 F.3d at 191 (rejecting the argument that an expansive interpretation of "covered offense" would lead to a "procedural windfall" for certain defendants because Section 404 eligibility does not necessarily entail Section 404 relief and because "[i]t is hardly surprising that Congress would prefer to extend such 'procedural relief' broadly to ensure that substantive relief would be available everywhere it is appropriate[.]") (emphasis in original).

Also persuasive is Smith's practical point that even defendants sentenced for crack offenses under Section 841(b)(1)(C) prior to the Fair Sentence Act would have experienced the crack-to-cocaine sentencing disparities that the Fair Sentencing Act and the First Step Act were designed to

38

soften because the statutory benchmarks "likely have an anchoring effect on a sentencing judge's decision making." Smith, 954 F.3d at 451.

The result that Aller may be eligible for a reduced sentence under Section 404 of the First Step Act based on his Section 841(b)(1)(C) crack cocaine conviction thus comports both with the statutory text as well as the legislative purpose of the Act.

Because Aller was convicted for a crack cocaine offense under Section 841(b)(1)(C), the statutory penalties of which were "modified" by Section 2 of the Fair Sentencing Act, Aller was convicted of a "covered offense" and is eligible for a reduction of sentence under Section 404.

**B.**

Whether Aller should be afforded a reduction in his sentence of twenty years' imprisonment to run consecutively with the thirty-year sentence of imprisonment on the remaining counts will require careful consideration. The Court of Appeals for the Second Circuit has cautioned that "many defendants who are eligible for Section 404 relief may receive no substantial relief at all." Johnson, 961 F.3d at 191. "Section 404 relief is discretionary, after all, and a district judge may exercise that discretion and deny relief where appropriate." Id. Before

exercising that discretion, the Court will order a new Pre-Sentence Report and further briefing from the parties.

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not discussed, the arguments of the parties are either moot or without merit. The motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) is **denied.** The petition for a writ of audita querela is **denied.** The motion under Section 404 of the First Step Act is **granted.**

**SO ORDERED.**

**Dated:**     **New York, New York**
              **September 11, 2020**          ____/s/ John G. Koeltl____
                                                   **John G. Koeltl**
                                              **United States District Judge**